USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-9-15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KASTRIOT DJOMBALIC,

                    Petitioner,

- against -

CHRISTOPHER SHANAHAN, et al.,
Acting New York Field Office Director for
U.S. Immigration and Customs Enforcement

                    Respondents.

OPINION & ORDER
15-CV-1469 (RLE)

RONALD L. ELLIS, U.S.M.J.:

## I. INTRODUCTION

Petitioner Kastriot Djombalic seeks a writ of habeas corpus under 28 U.S.C. § 2241. (Doc. No. 1) On September 24, 2014, the United States Department of Homeland Security ("DHS") Bureau of Immigration and Customs Enforcement ("ICE") detained Djombalic pursuant to Section 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), which mandates that ICE detain without bond certain categories of criminal aliens pending the outcome of their removal proceedings. (Doc. No. 10-7) Djombalic has now been detained for approximately eight months. He argues that he is not properly subject to mandatory detention without a bond hearing, and that he has been deprived of his liberty without due process of law in violation of the Fifth Amendment to the United States Constitution. (Doc. No. 1) The Parties consented to the jurisdiction of the undersigned on April 7, 2015, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. No. 12) This case requires the Court to interpret the meaning of the phrase "when the alien is released" within the statutory framework of the INA. For the reasons which follow, the Court finds that Djombalic is not properly subject to mandatory detention.

Djombalic's Petition is **GRANTED** and the government is directed to provide Djombalic with an individualized bond hearing by June 19, 2015.

## II. BACKGROUND

Djombalic and his family are members of an Albanian Muslim ethnic minority who, as a result of the persecution they suffered in Yugoslavia, applied for refugee status in the United States. (Doc. No. 1, Ex. B at 33.) When his parents' application was granted in 1971, Djombalic came to the United States from Yugoslavia at the age of two. (*Id.*) Now forty-six years old, he has been a legal permanent resident for forty-four years. (*Id.*) Since 1971, Kastriot has lived and worked in New York City. (*Id.*) He currently lives with his wife and their two sons in Brooklyn, but "splits time" between his home and his parents' home because they frequently need his assistance with housework and errands. (*Id.*) Djombalic's son Valon is a student-athlete who plays basketball for Brooklyn College and is currently working toward a degree in kinesiology. Both of Djombalic's sons are "devastated that their father is incarcerated and might be deported." (Doc. No. 1, Ex. C at 39.)

### A.   Djombalic's Criminal History

Between 2007 and 2012, Djombalic was convicted of one felony and three misdemeanors.[1] (Doc. No. 10-3 at 5-8; Doc. No. 10-5 at 3.) On April 25, 2007, he pled guilty to attempted robbery in the second degree under New York State Penal Law ("NYPL") § 160.10 and was sentenced to a two-year term of incarceration and a three-year term of post-release supervision time. (*Id.* at 8.) On October 30, 2010, he pled guilty to criminal possession of a

---

[1] Djombalic's full criminal history contains various misdemeanors, all of which occurred before the 2007-2012 convictions discussed herein. Because the Notice of Appearance which preceded Djombalic's arrest and detainment premises Djombalic's removability on his 2007-2012 convictions, the rest of his criminal history is irrelevant to the Court's analysis and will not be addressed in full. (Doc. No. 10-3 at 1-13.)

2

controlled substance in the seventh degree under NYPL § 220.03 and was sentenced to a five-day term of incarceration and a six-month license suspension. (*Id.* at 5.) On August 25, 2012, Djombalic pled guilty to criminal possession of a controlled substance in the seventh degree and was sentenced to "time-served" and a six-month license suspension. (*Id.* at 3.) He was last released from criminal custody on August 25, 2012. (*Id.*)

B.    **Djombalic's ICE Detention and Removal Proceedings**

On the morning of September 24, 2014, approximately two years after his 2012 conviction, ICE agents went to Djombalic's apartment and arrested him in front of his wife and children. (Doc. No. 9-1; Doc. No. 1. Ex. B at 34.) ICE charged Djombalic with being subject to removal pursuant to section 237(a)(2)(B)(i) of the INA for having committed an offense involving a controlled substance, and section 237(a)(2)(A)(iii), for having committed an aggravated felony. (Doc. No. 10-6 at 3-4.) Djombalic faces removal proceedings which have not yet been scheduled. On February 27, 2015, he requested a bond hearing before Immigrant Judge ("IJ") Alan Page. (Doc. No. 1 at 13.) IJ Page ruled that Djombalic was subject to mandatory detention and therefore not eligible for bond. (Doc. No. 9 at 10.)

C.    **Djombalic's Federal Habeas Corpus Petition**

Djombalic filed his Petition on February 27, 2015: the same day that IJ Page determined he was ineligible for bond. (Doc. No. 5) Djombalic seeks an order, *inter alia*, directing ICE to release him "immediately on his own recognizance or under parole, bond, or reasonable conditions of supervision, or, in the alternative, ordering [ICE] to provide [him] with a constitutionally adequate, individualized hearing before an impartial adjudicator" pursuant to 8 U.S.C. § 1226(c). (Doc. No. 1 at 24-25.)

Djombalic argues that he does not fall within the limited class of persons who are subject to mandatory detention "when . . . released" under 8 U.S.C. § 1226(c) because the "when . . . released" clause requires ICE to arrest and detain individuals "immediately after" or "at the time of" their release. (Doc. No. 5 at 16.) Because he was not arrested and detained by ICE at the time of his 2012 conviction, Djombalic argues that he is eligible for a bond hearing under 8 U.S.C. § 1226(a). (*Id.*) He further argues that his continued detention without an individualized hearing violates his due process rights. (*Id.* at 18-24.)

The government filed its opposition to the Petition on March 31, 2015, and Djombalic filed a reply on April 6, 2015. (Doc. Nos. 10, 11) The Court has reviewed and considered these and other submissions from the Parties.

### III. JURISDICTION

This Court has subject matter jurisdiction over Djombalic's Petition pursuant to 28 U.S.C. § 2241(c)(3). *See, e.g., Reynoso v. Aviles*, No. 14-CV-9482 (PAE), 2015 WL 500182, at *2 (S.D.N.Y. Feb. 5, 2015); *Cruz v. Shanahan*, No. 14-CV-9736 (VEC), 2015 WL 409225, at *1 (S.D.N.Y. Jan. 30, 2015); *Martinez-Done v. McConnell*, No. 14-CV-3071 (SAS), 2014 WL 5032438, at *4 (S.D.N.Y. Oct. 8, 2014); *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 537 (S.D.N.Y. 2014); *Lora v. Shanahan*, 15 F. Supp. 3d 478, 482 (S.D.N.Y. 2014); *Straker v. Jones*, 986 F. Supp. 2d 345, 350 (S.D.N.Y. 2013). Although the INA precludes judicial review of the Attorney General's discretionary judgments regarding the detention and release of noncitizens, *see* § 1226(e), the United States Supreme Court has held that the INA "does not deprive the federal courts of jurisdiction to grant habeas relief to aliens challenging their detention under § 1226(c)." *Demore v. Kim*, 538 U.S. 510, 511 (2003). The government does not dispute this Court's subject matter jurisdiction over Djombalic's Petition. (Doc. No. 9)

The government argues, however, that the Court lacks personal jurisdiction over Djombalic's Petition because he has failed to name the proper respondent in this action - Oscar Aviles, the warden who oversees Djombalic's current detention facility. (Doc. No. 9 at 19.) Djombalic argues that because he was being detained at 201 Varick Street in Manhattan at the time he filed his Petition, he was required to name as respondents his immediate custodians at that facility. (Doc. No. 11 at 6.) Djombalic's immediate custodians at Varick Street – Christopher Shanahan and Dianne McConnell – are the named Respondents in this action. (*Id.*)

The Parties do not dispute that Djombalic was being held in this District when he filed his Petition or that this Court is the proper venue for this action. (Doc. No. 11 at 6; Doc. No. 9 at 19 n. 6.) Significantly, the Parties also do not dispute that the "default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfield v. Padilla*, 542 U.S. 426, 435 (2004). (Doc. No. 11 at 6; Doc. No. 9 at 12) The primary point of contention between the Parties appears to be the government's allegation that Djombalic's filing was designed to "circumvent case law in the Third Circuit" and "forum shop." (Doc. No. 9 at 19.) This argument is irrelevant to the Court's analysis of personal jurisdiction and without factual basis: Djombalic and his family are all New York residents, Djombalic's convictions all occurred in New York, and his removal proceedings are to take place in New York. (Doc. No. 11 at 6.) Despite its suggestions that Djombalic has engaged in less than good faith conduct, the government has declined to formally "contest that this Court is the proper venue for this action" and "does not dispute that this Court may properly consider the Petition." (Doc. No. 9 at 19 n. 6.) As this Court has held (and the government has previously conceded), a court does not lose the ability to exercise review over a petitioner's detention merely because the government has transferred the petitioner

5

to a new facility; jurisdiction is established at the time the petition is filed. *See Araujo-Cortes*, 35 F. Supp. 3d at 537; *Lora*, 15 F. Supp. 3d at 482 n. 6; *Louisaire v. Muller*, 758 F. Supp. 2d 229, 233 (S.D.N.Y. 2010).

## IV. DISCUSSION

### A. The Meaning of "When"

The undersigned addressed the meaning of "when" in the INA's mandatory detention statute in *Sutherland v. Shanahan, et al.*, 15-CV-2224 (S.D.N.Y. June 8, 2015). Djombalic's Petition raises the same legal arguments on similar facts. After conducting a thorough analysis of § 1226(c) in *Sutherland*, the Court concluded that the word "when" in the detention statute clearly and unambiguously requires that ICE take noncitizens into custody at a time reasonably coincident to any qualifying release from criminal custody. (*Id.*, Doc. No. 20) Djombalic, like Sutherland, was not detained when he was released from criminal custody. "While the exact point at which ICE loses its authority to detain without affording an alien an individualized bail hearing under section 1226(c) may be unclear, the Court is confident that a [two-year] gap between criminal release and assumption of immigration custody is an unreasonable delay" for a noncitizen such as Djombalic. *Lora*, 15 F. Supp. 3d at 490 (quoting *Debel v. Dubois*, 2014 WL 708556, at *10). Djombalic's detention can only be authorized under section 1226(a) which entitles him to an individualized bond hearing before an immigration judge.

### B. Due Process

Because the Court finds for Djombalic on the "meaning of 'when'" argument, it need not reach his alternative claim that his continued detention without a hearing violates his due process rights. (Doc. No. 1 at 18-24.)

6

## VI. CONCLUSION

For the reasons set forth above, Djombalic's habeas corpus petition is **GRANTED**. The government is directed to provide Djombalic with an individualized bond hearing by June 19, 2015.

**SO ORDERED this 9th day of June 2015**
New York, New York

*[signature]*
The Honorable Ronald L. Ellis
United States Magistrate Judge